# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | | |
|---|---|---|
| JOSEPH MICHAEL DEVON ENGEL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:20-cv-01430-AGF |
| | ) | |
| MISSOURI DEPARTMENT | ) | |
| OF CORRECTIONS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter comes before the Court on the motion of plaintiff Joseph Michael Devon Engel for leave to commence this civil action without prepayment of the required filing fee. (Docket No. 2). Having reviewed the motion, the Court has determined that plaintiff lacks sufficient funds to pay the entire filing fee, and will assess an initial partial filing fee of $1.00. *See* 28 U.S.C. § 1915(b)(1). Additionally, for the reasons discussed below, the Court will dismiss this action without prejudice for failure to state a claim.

### 28 U.S.C. § 1915(b)(1)

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action in forma pauperis is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his or her prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these monthly

payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10.00, until the filing fee is fully paid. *Id*.

Plaintiff has not submitted a prison account statement as required by 28 U.S.C. § 1915(a)(2). Nevertheless, having reviewed the information contained in the motion, the Court will require plaintiff to pay an initial partial filing fee of $1.00. *See Henderson v. Norris*, 129 F.3d 481, 484 (8th Cir. 1997) (when a prisoner is unable to provide the Court with a certified copy of his prison account statement, the Court should assess an amount "that is reasonable, based on whatever information the court has about the prisoner's finances"). If plaintiff is unable to pay the initial partial filing fee, he must submit a copy of his prison account statement in support of his claim.

### Legal Standard on Initial Review

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed in forma pauperis if it is frivolous, malicious, or fails to state a claim upon which relief can be granted. To state a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id*. at 679. The court must "accept as true the facts alleged, but not legal conclusions or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016). *See also Brown v. Green Tree Servicing LLC*, 820 F.3d 371, 372-73 (8th Cir. 2016) (stating that court must accept factual allegations in complaint as true, but is not required to "accept as true any legal conclusion couched as a factual allegation").

2

When reviewing a pro se complaint under § 1915(e)(2), the Court must give it the benefit of a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of an allegation is discernible, the district court should construe the plaintiff's complaint in a way that permits his or her claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even pro se complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). *See also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (stating that federal courts are not required to "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint"). In addition, affording a pro se complaint the benefit of a liberal construction does not mean that procedural rules in ordinary civil litigation must be interpreted so as to excuse mistakes by those who proceed without counsel. *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

### The Complaint

Plaintiff is a self-represented litigant who is currently incarcerated at the Eastern Reception, Diagnostic and Correctional Center (ERDCC) in Bonne Terre, Missouri. He brings this action pursuant to 42 U.S.C. § 1983. His complaint names the Missouri Department of Corrections, Corizon, Jefferson County, Mercy Hospital in Festus, Missouri, and St. Claire Hospital in Fenton, Missouri as defendants. (Docket No. 1 at 3, 5).

Plaintiff's complaint is handwritten on a Court form, and supplemented by additional sheets of paper. Despite being on a Court form, the complaint is somewhat confusing in the way it is presented. Instead of providing "a short and plain statement of the claim," as required by Rule 8 of the Federal Rules of Civil Procedure, plaintiff's complaint is long, filled with extraneous

commentary, and touches on unrelated claims happening at different times and in different locations.

The bulk of plaintiff's complaint, comprising approximately fifteen total pages, is devoted to detailed explanations about where plaintiff wants his damage amounts directed. For example, on one page, plaintiff states that he wants $1 million to go to the canteen fund for each Missouri prison; $1 million to go to each Missouri prison for religious services; $10 million in education funds for the Missouri Department of Corrections, to be watched by the "Feds"; $1 million in gym equipment for each prison; $50 million in a "money [market] account to make money" for the Missouri Department of Corrections; and a separate $30 million money market account for drug treatment in Missouri. (Docket No. 1 at 2). Plaintiff states that if defendants comply with his demands, he will "knock the 800 billion down to 5 billion dollars." He will "knock [off] 5 billion more" if a prison is closed. On a different page, plaintiff states that he wants $100 million for himself, in cash, stocks, and bonds, and then provides a list of apparent family members, indicating what they should receive in compensation. (Docket  No. 1 at 8). For some individuals, plaintiff directs that they receive money only. For others, plaintiff states that they should also receive a business, property, or college scholarship.

In the "Statement of Claim" section of the form complaint, plaintiff asserts the following, in its entirety: "cruel and [unusual] punishment/[denial of] rights/medical/mental health/torture/not enough food/not going by [protocol]/religion/laboring laws/[trauma], psych, med = [neglect]." (Docket No. 1 at 5). Additionally, plaintiff states that he has religious dietary needs, that he has "special" dietary needs, that he requires "bigger lunch[es] for work release," that he has been at the ERDCC for one month without seeing a doctor, and that he has "issues with medical." (Docket

No. 1 at 7). With regard to Corizon, plaintiff contends that "Corizon has no [business] being in the medical profession at all."

In an attachment to the complaint, plaintiff states that he has been placed in "the hole" at the ERDCC. (Docket No. 1-1 at 1). It is not entirely clear why plaintiff has been placed in protective custody. At one point, he states that he is in protective custody because of "what happen[ed] in Jefferson County." (Docket No. 1-1 at 7). However, at another point, plaintiff explains that he was placed into protective custody because he "started another hunger [strike]." (Docket No. 1-1 at 2, 5). For whatever reason, plaintiff states that while in protective custody, there were "ants in [his] cell," and that he was only asked for his clothes once in six days. (Docket No. 1-1 at 1). He also states that "[y]ou can never get any medical," and that the "food is never cooked all the way." He also complains about being given boxers rather than a pair of pants, and how he only received one role of toilet paper per week.

Further, plaintiff states that it is too "cold in the hole," that he has only one blanket and one sheet, and that the mattress he sleeps on is "paper thin." (Docket No. 1-1 at 2). He also states that "they mix races" even if the inmates do not want to.

Plaintiff claims that he has been denied a religious diet and religious material, as well as access to the grievance procedure. He states that when he went to medical outcount his cell was "robbed," and that inmates are given too many "TB shots." Plaintiff also notes that since he has been in the Department of Corrections, he has been getting snack bags because his sugar gets too low, but that "now they deny sugar checks [and] snacks." With regard to the mental health medications that plaintiff has been prescribed, he states that they make him hungry and he does not like their side effects. (Docket No. 1-1 at 3).

With regard to Jefferson County, plaintiff states that the Jefferson County Jail conditions are bad and that there are sometimes three or four people to a cell. (Docket No. 1-1 at 4). He explains that "their medical consist[s] of one room" and two or three cells. Confusingly, plaintiff asserts that there was no doctor, but also states that the doctor was no good, and that he would not "let that doctor treat my dog." However, he acknowledges that "Jefferson County has some of the best nursing staff." Plaintiff further claims that Jefferson County Jail had "no religion, no books," and that "they need to get rid of some of the [metal] use chairs." He notes that the chewing tobacco and e-cigarettes were good, but they need to "lower the price some." Plaintiff contends that Jefferson County is big and that "communications are horrible." He is upset that when he told officers he was having mental health issues, he was placed on suicide watch. Plaintiff also complains that Jefferson County gives diabetics tablets rather than diet bags. (Docket No. 1-1 at 6).

With regard to St. Claire Hospital, plaintiff states that he went to the hospital after he was beaten "half to death by someone." (Docket No. 1-1 at 5). Once there, he was "pretty much" given "pain pills" and sent "on [his] way." Now, his eyesight "is messed up" and his jaw hurts every time he eats.

As to the Missouri Department of Corrections, in addition to the allegations set forth above, plaintiff has included a number of different claims that he separates by date. On September 7, 2020, plaintiff states that he "started another hunger [strike]," and Sergeant Kennon "just blew [him] down" and made him go on protective custody status. He claims that he "put [in] medical request after medical request," but that they were ignored. Plaintiff also asserts that he has "issues" with his blood sugar, but that "they do nothing about it." He further alleges that he has been denied

medical treatment with regard to his "problems digesting food," and that he was in protective custody five days without receiving clean clothes. (Docket No. 1-1 at 5-6).

Plaintiff states that on September 8, 2020, one wing of the ERDCC was filled with coronavirus cases. (Docket No. 1-1 at 6). He states that "trays in the hole are cold all the time," that he cannot access the grievance procedure, and that he is being punished as though he did something wrong, even though he is in protective custody. Plaintiff also explains that he practices the "Astru/Odinism Religion" and that he is required to have a "big breakfast," a regular lunch, a "big [dinner]," and "fresh fruit." Elsewhere in the complaint, he states that "[t]hey don't have nothing for [his] religious special needs," but acknowledges that breakfast "is fine," though it needs to be bigger, and that meals should be made from scratch. (Docket No. 1-1 at 13).

On September 10, 2020, plaintiff woke up with an "ant crawling on [him]." (Docket No. 1-1 at 7). He also states that "we killed" three brown recluses, and that it "was fun." Plaintiff notes that due to the coronavirus, there is no more room in C-wing.

Despite previously explaining that he was in protective custody for his hunger strike, plaintiff asserts in this portion of the complaint that he was placed in protective custody because of "what happen[ed] in Jefferson County." He states that he has a right to use the phone every day and a right to have recreation every day. Plaintiff also states that he has not received his "legal request stuff since" he arrived at the ERDCC. He alleges that he has been in the ERDCC for thirty days and has not seen a doctor, despite his medical service requests. Plaintiff repeats that he has "a history of messed up blood sugars," that he is supposed to "be on snack bags," and that he needs a "special diet" because of his digestive system and his religion. He complains that he was given a top bunk despite his "sever[e] back problems," and that pillows are reused "after people go

home" from having had the coronavirus, further noting that the coronavirus is "so bad" at the ERDCC. (Docket No. 1-1 at 7-8).

On September 11, 2020, during "med pass," plaintiff states that "a nurse gave someone meds that" were supposed to go to somebody else. (Docket No. 1-1 at 9). Plaintiff terms this "another one of Corizon['s] good decisions." He further states that after "[nine] days of being here," plaintiff "finally got a change of [clothes]." Plaintiff insists that he is in prison "for crimes [he] did not commit," and that the inmates "are just a herd of cattle to Missouri."

On September 13, 2020, plaintiff states that he "finally" received cleaning supplies after almost two weeks. (Docket No. 1 at 10). He vaguely accuses a correctional officer he identifies as Officer Anderson of "helping" to ruin his life. Plaintiff objects to being placed "in the hole" with people who are sick with coronavirus, and to their food being "open in the air," due to the danger of the virus.

On September 17, 2020, Sergeant Kennon and Officer Griffith, who had plaintiff's "religious tray going," stopped it in the morning. (Docket No. 1-1 at 11). Plaintiff also mentions seeing "bugs through a crack in the wall," and a "shower light shorting out."

The following day, plaintiff states that he was handcuffed "on the bench" for eighteen hours with his hands behind his back. He does not explain why this occurred, except to say that "they [kept] trying to make [him] cell with black people and child molesters and [he] would not do it." On September 19, 2020, he "declared" his sovereign citizenship to the staff, but "still [has] not heard [anything]" in response.

As a result of defendants' actions, plaintiff states that he cannot digest food, that he has vision and mental health problems, that "sometimes" he has back problems, and that he suffers

from grief, flashbacks, and nightmares. (Docket No. 1 at 7). Plaintiff is seeking enormous sums of money to be dispensed as he outlines in the complaint.

**Discussion**

Plaintiff is a self-represented litigant who has filed this civil action pursuant to 42 U.S.C. § 1983, naming the Missouri Department of Corrections, Jefferson County, Corizon, Mercy Hospital, and St. Claire Hospital as defendants. For the reasons discussed below, the Court has determined that plaintiff has failed to state a claim against any of the named defendants, and will dismiss those claims without prejudice. The Court has also reviewed the additional claims in plaintiff's complaint, and has determined that they must also be dismissed without prejudice for failure to state a claim.

**A.  Missouri Department of Corrections/State of Missouri**

Plaintiff has named the Missouri Department of Corrections and the State of Missouri as defendants. Plaintiff's claims fail for two reasons. First, neither the Missouri Department of Corrections nor the State of Missouri is a "person" for purposes of 42 U.S.C. § 1983. Second, plaintiff's claim against a state and a state agency is barred by the Eleventh Amendment.

**i.      State is Not a 42 U.S.C. § 1983 Person**

"Section 1983 provides for an action against a 'person' for a violation, under color of law, of another's civil rights." *McLean v. Gordon*, 548 F.3d 613, 618 (8th Cir. 2008). *See also Deretich v. Office of Admin. Hearings*, 798 F.2d 1147, 1154 (8th Cir. 1986) (stating that "[§] 1983 provides a cause of action against persons only"). However, "neither a State nor its officials acting in their official capacity are 'persons' under § 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). *See also Calzone v. Hawley*, 866 F.3d 866, 872 (8th Cir. 2017) (stating that a "State is

not a person under § 1983"); and *Kruger v. Nebraska*, 820 F.3d 295, 301 (8th Cir. 2016) (stating

that "a state is not a person for purposes of a claim for money damages under § 1983").

Here, plaintiff has sued the Missouri Department of Corrections and the State of Missouri

for money damages. As noted above, however, a state is not a § 1983 "person" for purposes of

such a claim. Because neither the Missouri Department of Corrections nor the State of Missouri is

a person, plaintiff is missing an essential element under § 1983. Therefore, these claims must be

dismissed.

### ii.   Sovereign Immunity

"Sovereign immunity is the privilege of the sovereign not to be sued without its consent."

*Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 253 (2011). The Eleventh Amendment

has been held to confer immunity on an un-consenting state from lawsuits brought in federal court

by a state's own citizens or the citizens of another state. *Edelman v. Jordan*, 415 U.S. 651, 662-63

(1974). *See also Webb v. City of Maplewood*, 889 F.3d 483, 485 (8th Cir. 2018) ("The Eleventh

Amendment protects States and their arms and instrumentalities from suit in federal court"); *Dover

Elevator Co. v. Ark. State Univ.*, 64 F.3d 442, 446 (8th Cir. 1995) ("The Eleventh Amendment bars

private parties from suing a state in federal court"); and *Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d

615, 618-19 (8th Cir. 1995) ("Generally, in the absence of consent a suit in which the State or one

of its agencies or departments is named as the defendant is proscribed by the Eleventh

Amendment"). The Eleventh Amendment bars suit against a state or its agencies for any kind of

relief, not merely monetary damages. *Monroe v. Arkansas State Univ.*, 495 F.3d 591, 594 (8th Cir.

2007) (stating that district court erred in allowing plaintiff to proceed against state university for

injunctive relief, and remanding matter to district court for dismissal).

There are two "well-established exceptions" to the sovereign immunity provided by the Eleventh Amendment. *Barnes v. State of Missouri*, 960 F.2d 63, 64 (8th Cir. 1992). "The first exception to Eleventh Amendment immunity is where Congress has statutorily abrogated such immunity by clear and unmistakable language." *Id*. The second exception is when a state waives its immunity to suit in federal court. *Id*. at 65. A state will be found to have waived her immunity "only where stated by the most express language or by such overwhelming implications from the text as will leave no room for any other reasonable construction." *Welch v. Tex. Dep't of Highways & Pub. Transp.*, 483 U.S. 468, 473 (1987). Neither exception is applicable in this case.

The first exception is inapplicable, because the Supreme Court has determined that § 1983 does not revoke a state's Eleventh Amendment immunity from suit in federal court. *See Will*, 491 U.S. at 66 ("We cannot conclude that § 1983 was intended to disregard the well-established immunity of a State from being sued without its consent"); and *Quern v. Jordan*, 440 U.S. 332, 341 (1979) ("[W]e simply are unwilling to believe…that Congress intended by the general language of § 1983 to override the traditional sovereign immunity of the States"). The second section is also inapplicable, because the State of Missouri has not waived its sovereign immunity in this type of case. *See* Mo. Rev. Stat. 537.600 (explaining that sovereign immunity is in effect, and providing exceptions).

Here, plaintiff has named the Missouri Department of Corrections and the State of Missouri as defendants. As noted above, however, the Eleventh Amendment bars suit against a state or its agencies for both monetary and injunctive relief. Furthermore, no exceptions to sovereign immunity are present in this case. Therefore, for this reason as well, plaintiff's claims against the Missouri Department of Corrections and the State of Missouri must be dismissed.

**B.  Jefferson County**

Plaintiff has named Jefferson County as a defendant. A local governing body such as Jefferson County can be sued under 42 U.S.C. § 1983. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978). In order to prevail on this type of claim, the plaintiff must establish the governmental entity's liability for the alleged conduct. *Kelly v. City of Omaha, Neb.*, 813 F.3d 1070, 1075 (8th Cir. 2016). Such liability may attach if the constitutional violation "resulted from (1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise." *Mick v. Raines*, 883 F.3d 1075, 1079 (8th Cir. 2018). *See also Marsh v. Phelps Cty.*, 902 F.3d 745, 751 (8th Cir. 2018) (recognizing "claims challenging an unconstitutional policy or custom, or those based on a theory of inadequate training, which is an extension of the same"). Thus, there are three ways in which plaintiff can show that Jefferson County is liable to him for a constitutional violation.

First, plaintiff can show the existence of an unconstitutional policy. "Policy" refers to "official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Corwin v. City of Independence, Mo.*, 829 F.3d 695, 700 (8th Cir. 2016). *See also Russell v. Hennepin Cty.*, 420 F.3d 841, 847 (8th Cir. 2005) ("A policy is a deliberate choice to follow a course of action made from among various alternatives by the official or officials responsible…for establishing final policy with respect to the subject matter in question"). For a policy that is unconstitutional on its face, a plaintiff needs no other evidence than a statement of the policy and its exercise. *Szabla v. City of Brooklyn, Minn.*, 486 F.3d 385, 389 (8th Cir. 2007). However, when "a policy is constitutional on its face, but it is asserted that a municipality should have done more to prevent constitutional violations by its employees, a plaintiff must establish the existence of a 'policy' by demonstrating that the

inadequacies were a product of deliberate or conscious choice by the policymakers." *Id.* at 390. "A policy may be either a policy statement, ordinance, regulation, or decision officially adopted and promulgated by the municipality's governing body." *Angarita v. St. Louis Cty.*, 981 F.2d 1537, 1546 (8th Cir. 1992).

Second, plaintiff can establish a claim of liability based on an unconstitutional "custom." In order to do so, plaintiff must demonstrate:

> 1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;
>
> 2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and
>
> 3) That plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation.

*Johnson v. Douglas Cty. Med. Dep't*, 725 F.3d 825, 828 (8th Cir. 2013).

Finally, plaintiff can assert a municipal liability claim by establishing a deliberately indifferent failure to train or supervise. To do so, plaintiff must allege a "pattern of similar constitutional violations by untrained employees." *S.M. v. Lincoln Cty.*, 874 F.3d 581, 585 (8th Cir. 2017).

Plaintiff does not need to specifically plead the existence of an unconstitutional policy or custom. *Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 591 (8th Cir. 2004). However, at a minimum, the complaint must allege facts supporting the proposition that an unconstitutional policy or custom exists. *Doe ex rel. Doe v. Sch. Dist. of City of Norfolk*, 340 F.3d 605, 614 (8th Cir. 2003).

13

Here, plaintiff has not alleged facts against Jefferson County sufficient to support the proposition that Jefferson County has an unconstitutional policy or custom, or that it has been deliberately indifferent in failing to train or supervise its employees.

First, plaintiff has not established that Jefferson County has an unconstitutional policy, because his facts do not point to any "policy statement, ordinance, regulation, or decision officially adopted and promulgated by the municipality's governing body." Instead, he has only asserted vague, fleeting references to Jefferson County, none of which tend to show that his constitutional rights were violated due to "a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters."

Second, plaintiff has not demonstrated that Jefferson County has an unconstitutional custom. That is, he has not presented facts showing the "existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees," much less that Jefferson County officials were deliberately indifferent to or tacitly authorized such misconduct. Instead of establishing a pattern, plaintiff's vague and conclusory allegations against Jefferson County are insufficient to establish any constitutional violation whatsoever.

Similarly, plaintiff's facts do not indicate a deliberately indifferent failure to train or supervise on the part of Jefferson County. In other words, his allegations do not show a "pattern of similar constitutional violations by untrained employees." Indeed, his facts, such as they are, do not sufficiently allege any constitutional violation, and certainly not a pattern of them.

As discussed above, plaintiff has not demonstrated that his constitutional rights were violated due to an unconstitutional policy, custom, or failure to train on the part of Jefferson County. Therefore, plaintiff's claim against Jefferson County must be dismissed. *See Ulrich v. Pope Cty.*, 715 F.3d 1054, 1061 (8th Cir. 2013) (affirming district court's dismissal of *Monell* claim

14

where plaintiff "alleged no facts in his complaint that would demonstrate the existence of a policy or custom" that caused the alleged deprivation of plaintiff's rights).

### C.  Corizon

"A corporation acting under color of state law cannot be liable on a respondeat superior theory." *Smith v. Insley's Inc.*, 499 F.3d 875, 880 (8th Cir. 2007). Rather, to support a claim against an entity such as Corizon, the plaintiff "must show that there was a policy, custom, or official action that inflicted an actionable injury." *Johnson v. Hamilton*, 452 F.3d 967, 973 (8th Cir. 2006). *See also Sanders v. Sears, Roebuck & Co.*, 984 F.2d 972, 975 (8th Cir. 1993) (stating that a corporation acting under color of state law will only be held liable where "there is a policy, custom or action by those who represent official policy that inflicts injury actionable under § 1983"); and *Stearns v. Inmate Services Corp.*, 957 F.3d 902, 906 (8th Cir. 2020) (explaining that the "proper test" for determining whether a corporation acting under color of state law is liable under 42 U.S.C. § 1983 "is whether there is a policy, custom, or action by those who represent…official policy that inflicts injury actionable under § 1983").

Here, plaintiff only fleetingly references Corizon, stating that "Corizon has no business being in the health profession." Aside from this, plaintiff complains about digestive issues, blood sugar issues, back issues, his mental health medications, and not seeing a doctor in thirty days. Nothing in the complaint, however, demonstrates that plaintiff was injured because of a policy, custom, or official action on Corizon's part. That is, plaintiff never connects his vague allegations with any Corizon policy, custom, or action taken by a Corizon official. Therefore, plaintiff's claim against Corizon must be dismissed.

**D.  St. Claire Hospital in Fenton, Missouri**

In order to state a claim for relief under 42 U.S.C. § 1983, "a plaintiff must allege sufficient facts to show (1) that the defendant(s) acted under color of state law, and (2) that the alleged wrongful conduct deprived the plaintiff of a constitutionally protected federal right." *Zutz v. Nelson*, 601 F.3d 842, 848 (8th Cir. 2010). To that end, a defendant can only be held liable pursuant to § 1983 for actions taken under color of state law. *Carlson v. Roetzel & Andress*, 552 F.3d 648, 650 (8th Cir. 2008). *See also Magee v. Trustees of Hamline Univ., Minn.*, 747 F.3d 532, 535 (8th Cir. 2014) (stating that § 1983 "imposes liability for certain actions taken under color of law that deprive a person of a right secured by the Constitution and laws of the United States"); *Sanders*, 984 F.2d at 975 (stating that § 1983 secures constitutional rights from government infringement, not infringement by private parties); and *Montano v. Hedgepeth*, 120 F.3d 844, 848 (8th Cir. 1997) (stating that pursuant to § 1983, "the challenged conduct must have been committed by one who acts under color of law").

When a private party acts under color of state law, it can be held liable under § 1983. *Crumpley-Patterson*, 388 F.3d at 590. However, a private party may only be held liable "if it is a willful participant in joint activity with the State or its agents." *Gibson v. Regions Fin. Corp.*, 557 F.3d 842, 846 (8th Cir. 2009). In order to state a claim against a private party under § 1983, the plaintiff "must allege, at the very least, that there was a mutual understanding, or a meeting of the minds, between the private party and the state actor." *Mershon v. Beasley*, 994 F.2d 449, 451 (8th Cir. 1993).

In this case, plaintiff states that he went to St. Claire Hospital in Fenton, Missouri, after he had been beaten up. There, he was given pain medications, which plaintiff finds insufficient, claiming that he still suffers from his injuries to this day. None of plaintiff's facts, however,

establish that St. Claire Hospital was acting under color of state law. Certainly, it is not a governmental entity, and plaintiff does not allege that it was contracted by any governmental entity to provide medical service on behalf of a county or the state. Because plaintiff is missing an essential element of a 42 U.S.C. § 1983 action, the claim against St. Claire Hospital must be dismissed.

### E.  Mercy Hospital in Festus, Missouri

Similar to St. Claire Hospital, plaintiff has not provided any indication that Mercy Hospital in Festus, Missouri, is a state actor or acted under color of state law. *See Magee*, 747 F.3d at 535 (stating that § 1983 "imposes liability for certain actions taken under color of law that deprive a person of a right secured by the Constitution and laws of the United States"). Such an indication is required to state a 42 U.S.C. § 1983 claim. Moreover, plaintiff has presented no allegations in his complaint accusing Mercy Hospital of a constitutional violation. Merely listing Mercy Hospital as a defendant is not enough to assert their responsibility. *See Allen v. Purkett*, 5 F.3d 1151, 1153 (8th Cir. 1993) (agreeing with district court dismissal of two defendants who were named as defendants in the complaint, but who had no factual allegations made against them); and *Krych v. Hvass*, 83 Fed. Appx. 854, 855 (8th Cir. 2003) (agreeing with district court dismissal of defendants who were merely listed in his complaint, and who were not alleged to have been personally involved in the constitutional violations). For these reasons, the claim against Mercy Hospital must be dismissed.

### F.  Sergeant Kennon, Officer Anderson, and Officer Griffith

Sergeant Kennon, Officer Anderson, and Officer Griffith are not named as defendants, either in the case caption or in the section of the form complaint for listing defendants. All defendants in an action must be properly identified. *See* Fed. R. Civ. P. 10(a) ("The title of the

17

complaint must name all the parties"). However, even if the Court were to assume that Sergeant Kennon, Officer Anderson, and Officer Griffith were properly named as defendants, plaintiff has still failed to state a claim against them.

Because these three defendants were not properly named, plaintiff has not indicated the capacity in which they are sued. A plaintiff can bring a § 1983 claim against a public official acting in his or her official capacity, his or her individual capacity, or both. *Baker v. Chisom*, 501 F.3d 920, 923 (8th Cir. 2007). However, if a plaintiff's complaint is silent about the capacity in which the defendant is being sued, the complaint is interpreted as including only official capacity claims. *Id. See also Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999) ("[I]n order to sue a public official in his or her individual capacity, a plaintiff must expressly and unambiguously state so in the pleadings, otherwise, it will be assumed that the defendant is sued only in his or her official capacity"); *Artis v. Francis Howell North Band Booster Ass'n, Inc.*, 161 F.3d 1178, 1182 (8th Cir. 1998) ("If the complaint does not specifically name the defendant in his individual capacity, it is presumed he is sued only in his official capacity"); and *Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 619 (8th Cir. 1995) ("If a plaintiff's complaint is silent about the capacity in which she is suing the defendant, we interpret the complaint as including only official-capacity claims").

In this case, because plaintiff has not stated the capacity in which Sergeant Kennon, Officer Anderson, and Officer Griffith are sued, any claims against them are assumed to be in their official capacities only.

In an official capacity claim against an individual, the claim is actually "against the governmental entity itself." *See White v. Jackson*, 865 F.3d 1064, 1075 (8th Cir. 2017). Thus, a "suit against a public employee in his or her official capacity is merely a suit against the public

employer." *Johnson*, 172 F.3d at 535. *See also Brewington v. Keener*, 902 F.3d 796, 800 (8th Cir. 2018) (explaining that official capacity suit against sheriff and his deputy "must be treated as a suit against the County"); *Kelly*, 813 F.3d at 1075 (stating that a "plaintiff who sues public employees in their official, rather than individual, capacities sues only the public employer"); and *Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006) (stating that a "suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent").

Based on the context in which they appear, Sergeant Kennon, Officer Anderson, and Officer Griffith are all employed by the Missouri Department of Corrections as correctional officers at the ERDCC. As such, the claims against them are actually claims against the State of Missouri itself. However, as discussed above, an individual acting in an official capacity is not a "person" under 42 U.S.C. § 1983. *Will*, 491 U.S. at 71 (stating that "neither a State nor its officials acting in their official capacity are 'persons' under § 1983"). Furthermore, as plaintiff is suing for money damages only, his claims are also barred by the doctrine of sovereign immunity. *See Monroe*, 495 F.3d at 594 (explaining that the Eleventh Amendment bars suit against a state or its agencies for any kind of relief, not merely monetary damages, but that a state official may be sued in an official capacity for prospective injunctive relief).

The Court notes that even if Sergeant Kennon, Officer Anderson, and Officer Griffith were sued in their individual capacities, plaintiff has not stated a claim against them. His allegations that Officer Anderson ruined his life, or that Sergeant Kennon and Officer Griffith stopped his religious tray on September 17, 2020, are not sufficient, without more, to state a constitutional violation. *See Torti v. Hoag*, 868 F.3d 666, 671 (8th Cir. 2017) ("Courts are not bound to accept as true a legal conclusion couched as a factual allegation, and factual allegations must be enough to raise a right to relief above the speculative level").

For these reasons, even if Sergeant Kennon, Officer Anderson, and Officer Griffith were properly named as defendants in this action, the claims against them would be subject to dismissal.

### G. First Amendment Free Exercise Claim

The First Amendment to the United States Constitution provides, in relevant part, that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof…" U.S. Const. amend. I. Pursuant to the Free Exercise Clause, an individual has the right to believe and profess whatever religious doctrine he or she desires. *In re Kemp*, 894 F.3d 900, 907 (8th Cir. 2018). Moreover, the government may not compel religious belief, punish the expression of religious doctrines, impose special disabilities based on religious views or religious status, or lend its power to a particular side in controversies over religious authority or dogma. *Id*.

Under the Free Exercise Clause of the First Amendment, a plaintiff must first raise a question of fact regarding whether the prison has placed a substantial burden on his ability to practice his or her religion. *Patel v. U.S. Bureau of Prisons*, 515 F.3d 807, 813 (8th Cir. 2008). *See also Weir v. Nix*, 114 F.3d 817, 820 (8th Cir. 1997) (stating that "[a]s an initial matter, a person claiming that a governmental policy or action violates his right to exercise his religion freely must establish that the action substantially burdens his sincerely held religious belief"). "To constitute a substantial burden, the government policy or actions must significantly inhibit or constrain conduct or expression that manifests some central tenet of a person's individual religious beliefs; must meaningfully curtail a person's ability to express adherence to his or her faith; or must deny a person reasonable opportunities to engage in those activities that are fundamental to a person's religion." *Murphy v. Missouri Dep't of Corrs.*, 372 F.3d 979, 988 (8th Cir. 2004).

Here, plaintiff states that he is part of the Astru/Odinism religion, and has been denied his religious diet, which he broadly explains means a "big" breakfast and dinner, a regular lunch, and fresh fruit. He also makes a reference to not being able to access religious materials.

These allegations are insufficient to show that plaintiff has been substantially burdened in practicing a sincerely held religious belief. His facts do not demonstrate how his religious diet manifests some central tenet of his beliefs; they do not show that not receiving his religious diet curtails his ability to express adherence to his faith; and they do not establish a denial of plaintiff's ability to reasonably engage in activities fundamental to his religion. Likewise, with regard to accessing religious materials, plaintiff does not provide the nature of those materials, and why they are necessary for him to practice his religion. Rather than supporting the proposition that his First Amendment right to exercise his religion has been violated, plaintiff relies on conclusory pleading that the Court is not required to accept as true. *See Wiles v. Capitol Indem. Corp.*, 280 F.3d 868, 870 (8th Cir. 2002) ("While the court must accept allegations of fact as true…the court is free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations"). Therefore, plaintiff's claim arising under the Free Exercise Clause must be dismissed.

### H.  Nutrition Claim

Prisoners have a right to nutritionally adequate food. *Wishon v. Gammon*, 978 F.2d 446, 449 (8th Cir. 1992). *See also Burgin v. Nix*, 899 F.2d 733, 734 (8th Cir. 1990) ("One constitutional protection retained by the prisoner is the right to an adequate diet"). While control of the diet is within the discretion of prison officials, the diet must be adequate. *Divers v. Dep't of Corrs.*, 921 F.2d 191, 194 (8th Cir. 1990). A plaintiff can demonstrate that his right to an adequate diet was violated by evidence "that the food he was served was nutritionally inadequate or prepared in a

21

manner presenting an immediate danger to his health, or that his health suffered as a result of the food." *Ingrassia v. Schafer*, 825 F.3d 891, 897 (8th Cir. 2016). *See also Obama v. Burl*, 477 Fed. Appx. 409, 412 (8th Cir. 2012) (stating that plaintiff's allegations regarding constant hunger, small food portions, and weight loss were sufficient for purposes of preservice review); and *Davis v. State of Missouri*, 389 Fed. Appx. 579, 579 (8th Cir. 2010) (stating that allegations that plaintiff lost nineteen pounds during eight-month stay in jail due to insufficient food, and that he was always sick and lacking energy, were sufficient to survive preservice dismissal).

Here, plaintiff has scattered allegations about the food at the ERDCC throughout the complaint. At one point he states that the food is not cooked all the way through, and that it is never enough. At another point, however, he states that the breakfast is fine, but it needs to be bigger, and that he wants the meals made from scratch. Aside from his religious diet, plaintiff also asserts the need for a "special diet" for his digestive needs.

These allegations do not demonstrate that plaintiff has been denied an adequate diet. He provides no facts to show that the food he has received is nutritionally inadequate, prepared in a manner presenting an immediate danger to his health, or that his health has suffered, such as by weight loss or sickness. With regard to his "special diet," plaintiff presents no facts as to what digestive issues he has, what his "special diet" requires, or even that he has notified anyone of these needs. Though plaintiff concludes that he is not receiving proper nutrition, the facts he has presented do not support his conclusion. Therefore, plaintiff's nutrition claim must be dismissed.

### I.   Deliberate Indifference to Medical Needs Claim

Under the Eighth Amendment, the government has an obligation to provide medical care to those whom it is punishing by incarceration. *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). To demonstrate constitutionally inadequate medical care, the inmate must show that a prison official's

conduct amounted to deliberate indifference. *Dulany v. Carnahan*, 132 F.3d 1234, 1237-38 (8th Cir. 1997).

In order to establish deliberate indifference, a plaintiff must prove that he suffered from an objectively serious medical need, and that prison officials actually knew of and disregarded that need. *Roberts v. Kopel*, 917 F.3d 1039, 1042 (8th Cir. 2019). *See also Hamner v. Burls*, 937 F.3d 1171, 1177 (8th Cir. 2019). "A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997). Deliberate indifference can include the intentional denial or delay of access to medical care, or the intentional interference with treatment or prescribed medication. *Vaughn v. Lacey*, 49 F.3d 1344, 1346 (8th Cir. 1995).

To prevail under this standard, an inmate must demonstrate that a prison health care provider's actions were "so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care." *Jackson v. Buckman*, 756 F.3d 1060, 1066 (8th Cir. 2014). As such, "deliberate indifference requires a highly culpable state of mind approaching actual intent." *Kulkay v. Roy*, 847 F.3d 637, 643 (8th Cir. 2017). Thus, a showing of deliberate indifference requires more than a mere disagreement with treatment decisions and is greater than gross negligence. *Gibson v. Weber*, 433 F.3d 642, 646 (8th Cir. 2006).

In this case, plaintiff states that he has been denied medical care because medical health service requests have been ignored; because he has not seen a doctor for thirty days; because "they do nothing about" his blood sugar issues, including not giving him snack bags or sugar checks; because nothing has been done for his digestive issues; because he was not monitored during his self-imposed hunger strikes; because he has been given a top bunk despite his back problems;

23

because he feels he has been given too many "TB shots"; and because he does not like his mental health medication. None of these allegations is sufficient to demonstrate deliberate indifference to his medical needs.

With regard to the blood sugar and digestive issues, plaintiff provides no facts as to the seriousness of these conditions, what he means when he states that nothing is being done, or what kind of treatment he requires. As to his medical service requests being ignored, and not seeing a doctor for thirty days, he provides no indication as to what he is requesting, or why he must see a doctor rather than another health professional. Similarly, plaintiff does not make clear what kind of monitoring he required while on a hunger strike. As to being placed on a top bunk, plaintiff provides no facts regarding the nature of his back problem, and no indication that a medical lay-in was being ignored. With regard to his dislike of his mental health medications, as well as the "TB shots," plaintiff's allegations amount to a disagreement with treatment decisions, which do not rise to the level of a constitutional violation.

More fundamentally, plaintiff does not identify any particular person or persons who are denying him medical treatment. Thus, he provides no allegations that any individual's actions were "so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care," which is necessary to demonstrate deliberate indifference. Furthermore, his ambiguous allegations do not satisfy the 42 U.S.C. § 1983 requirement that plaintiff establish a defendant's "causal link to, and direct responsibility for, the deprivation of rights." *See Mayorga v. Missouri*, 442 F.3d 1128, 1132 (8th Cir. 2006). For these reasons, plaintiff's deliberate indifference to medical needs claim must be dismissed.

**J.   Conditions of Confinement Claim**

Conditions of confinement "must not involve the wanton and unnecessary infliction of pain, nor may they be grossly disproportionate to the severity of the crime warranting imprisonment." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). *See also Nelson v. Corr. Med. Servs.*, 583 F.3d 522, 528 (8th Cir. 2009) (stating that "[t]he Eighth Amendment prohibits the infliction of cruel and unusual punishment on those convicted of crimes"). As such, pursuant to the Eighth Amendment, prisoners are entitled to the basic necessities of human life and to humane treatment. *Goff v. Menke*, 672 F.2d 702, 705 (8th Cir. 1982). To that end, prison officials are required to "ensure that inmates receive adequate food, clothing, shelter, and medical care." *Simmons v. Cook*, 154 F.3d 805, 807 (8th Cir. 1998).

In order to allege an Eighth Amendment violation, a prisoner must prove that the defendant's conduct rose to the level of a constitutional violation "by depriving the plaintiff of the minimal civilized measure of life's necessities." *Revels v. Vincenz*, 382 F.3d 870, 875 (8th Cir. 2004). The constitutional question regarding prison conditions and confinement is whether the defendant "acted with deliberate indifference." *Saylor v. Nebraska*, 812 F.3d 637, 644 (8th Cir. 2016). A prison official is deliberately indifferent if he or she "knows of and disregards…a substantial risk to an inmate's health or safety." *Id*. at 645.

In this case, plaintiff has protested various conditions of confinement throughout his complaint. With regard to sanitation, he states that there was a delay in getting cleaning supplies; that he once woke up with an ant on him; that three spiders were killed in his cell; and that he got one role of toilet paper a week. With regard to clothing, he states that there was a delay in getting his clothes laundered, and that while in "the hole" he had to wear boxers. He also alleges that his sleeping mat is too thin, that the ERDCC reuses pillows of inmates who have had the coronavirus,

25

and that it is too cold in his cell. None of these allegations establish that plaintiff's constitutional rights have been violated.

With regard to the delay in cleaning supplies, the delay in laundry services, and the instances of vermin in his cell, plaintiff does not present facts showing a substantial risk to his health or safety. Likewise, as to only receiving one role of toilet paper per week, plaintiff does not show how this threatened his health or safety, or was insufficient for his needs. As to it being too cold in his cell, plaintiff does not present allegations that the cold was extreme or that he was exposed to it for an undue length of time. *See Johnson v. Gober*, 2020 WL 4032419, at *2 (E.D. Ark. 2020) (explaining that the Eighth Amendment "guarantees prisoners the right to adequate shelter and protection from *extreme* cold, and courts examine allegations of the severity of the cold and the length of time the prisoner is exposed to it") (emphasis in original). Similarly, plaintiff has not shown that his mattress has caused him "serious harm." *See Brakeall v. Stanwick-Klemik*, 2020 WL 1180727, at *8 (D. S.D. 2020) (collecting cases). With regard to the reused pillows, plaintiff has not alleged that they are not washed before being reused, or are otherwise dangerous. Finally, his brief reference to being given boxers to wear while in "the hole," rather than pants, does not, without more, establish a deprivation of "the minimal civilized measure of life's necessities."

Aside from failing to show a substantial risk to his health or safety, plaintiff has also not sufficiently alleged any deliberate indifference. That is, plaintiff does not name any individuals who he feels are responsible for his conditions of confinement. Because he has not identified a defendant, it follows that he has also not shown that that defendant knew of and disregarded a risk to plaintiff. There is not, for instance, any indication that plaintiff has complained about his conditions of confinement to anyone, and that those complaints have been ignored. For these reasons, plaintiff's conditions of confinement claim must be dismissed.

### K.  Access to Grievance Process Claim

An inmate has a liberty interest in the nature of his confinement, but not an interest in the procedures by which the state believes it can best determine how he should be confined. *Kennedy v. Blankenship*, 100 F.3d 640, 643 (8th Cir. 1996). As such, "there is no constitutional liberty interest in having state officers follow state law or prison officials follow prison regulations." *Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003). To that end, a prison grievance procedure is a procedural right only and does not confer upon an inmate a substantive right. *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993). *See also Lomholt v. Holder*, 287 F.3d 683, 684 (8th Cir. 2002) (agreeing with district court that "defendants' denial of [plaintiff's] grievances did not state a substantive constitutional claim"); and *Fallon v. Coulson*, 5 F.3d 531, 1993 WL 349355, at *1 (8th Cir. 1993)  (unpublished opinion) (stating that the failure of defendants "to acknowledge receipt of and respond to plaintiffs' grievances pursuant to prison procedure did not violate any of plaintiffs' constitutional rights").

Here, plaintiff briefly mentions not being given access to informal resolution requests or grievances. As noted above, however, a prison grievance procedure does not confer upon plaintiff a substantive right. It therefore follows that being denied access to that procedure does not create a constitutional violation. Furthermore, plaintiff provides no supporting facts to show who denied him access, how this occurred, when this occurred, or why it occurred, thereby failing to state a claim. *See Neubauer v. FedEx Corp.*, 849 F.3d 400, 404 (8th Cir. 2017) (stating that a complaint does not "suffice if it tenders naked assertions devoid of further factual enhancement"). For these reasons, plaintiff's grievance claim must be dismissed.

**L.  Excessive Force Claim**

The Eighth Amendment forbids the "unnecessary and wanton infliction of pain" constituting cruel and unusual punishment. *Hudson v. McMillan*, 503 U.S. 1, 9-10 (1992). *See also Burns v. Eaton*, 752 F.3d 1136, 1138 (8th Cir. 2014) ("After incarceration, only the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment"). When a prison official is accused of using excessive physical force in violation of the Eighth Amendment, the core judicial inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Jackson v. Gutzmer*, 866 F.3d 969, 974 (8th Cir. 2017). *See also Ward v. Smith*, 844 F.3d 717, 721 (8th Cir. 2016) ("Because the use of force is sometimes required in prison settings, guards are liable only if they are completely unjustified in using force, i.e., they are using it maliciously and sadistically"). The factors to be considered in determining whether force was used in good faith include "the need for the application of force, the relationship between the need and the amount of force that was used, and the extent of injury inflicted." *Whitley v. Albers*, 475 U.S. 312, 321 (1986).

In his complaint, plaintiff alleges that he was handcuffed with his arms behind a bench for eighteen hours. He does not provide any other facts, other than to mention that he refused to be celled with "black people and child molesters." Plaintiff asserts this amounted to cruel and unusual punishment.

These facts are not sufficient to state an excessive force claim. First, plaintiff does not provide the context in which this alleged punishment occurred. That is, he does not provide any facts demonstrating that the use of force was malicious and sadistic, rather than a good-faith effort to restore or maintain discipline. Plaintiff implies that he was being punished for refusing certain cellmates, but this implication is not in his favor, as it tends to show that he was not following

directives. Second, plaintiff has made no attempt to name or identify the correctional officers involved. As such, plaintiff has not established a causal link between a defendant responsible for these actions, and the alleged deprivation of his rights. *See Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990) (stating that "[l]iability under § 1983 requires a causal link to, and direct responsibility for, the deprivation of rights"). For these reasons, plaintiff's excessive force claim must be dismissed.

### M. Stolen Property Claim

Plaintiff mentions briefly that when he went to a medical outcount, his cell was "robbed." A claim that property was stolen is not cognizable under 42 U.S.C. § 1983. That is, one of the essential elements of a § 1983 claim is that plaintiff be deprived of a constitutionally protected federal right. *Zutz*, 601 F.3d at 848. However, plaintiff's imprecise allegations regarding his property establish only the negligence of an unnamed staff member or members at the ERDCC. Negligence, however, even gross negligence, is not actionable under § 1983. *Sellers by and through Sellers v. Baer*, 28 F.3d 895, 902-03 (8th Cir. 1994). In other words, the due process clause is not implicated by "a negligent act of an official causing unintended loss of or injury to…property." *Daniels v. Williams*, 474 U.S. 327, 328 (1986). As plaintiff's stolen property claim does not raise a constitutional issue, it must be dismissed.

### N.  Access to Courts Claim

Plaintiff makes a single reference to not receiving his "legal request stuff" since arriving at the ERDCC. The United States Supreme Court has stated that it is "established beyond doubt that prisoners have a constitutional right of access to the courts." *Bounds v. Smith*, 430 U.S. 817, 821 (1977). This right requires that prisons provide "a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." *Lewis v. Casey*, 518 U.S.

343, 351 (1996). Plaintiff's brief and inexact allegation that he has not received "legal request stuff" is not sufficient to show that he is being denied access to the Courts. Furthermore, the Court notes that plaintiff has been able to file this case, and dozens of others,[1] without any seeming difficulty. Thus, to the extent that plaintiff is asserting an access to courts claim, the claim must be dismissed.

**O. Claims on Behalf of Others**

Plaintiff's complaint contains several allegations that concern things that happened to other inmates, rather than occurring to him personally. For instance, plaintiff claims that an inmate was sprayed with mace and then not given a shower; that an inmate handcuffed to a bench was getting hit because people said he was "a rat"; and that a nurse gave an inmate somebody else's medications. He also puts forth a general overcrowding claim, without ever asserting that he did not have enough space.

Plaintiff has no standing to bring claims on behalf of other prisoners. *See Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985) (stating that "[a] prisoner cannot bring claims on behalf of other prisoners"); and *Miner v. Brackney*, 719 F.2d 954, 956 (8th Cir. 1983) (explaining that plaintiff did not have "standing to assert" a constitutional claim on behalf of another person). In other words, plaintiff must allege a personal loss. *See Sargent*, 780 F.2d at 1337. Furthermore, as plaintiff is not an attorney, he can only plead and conduct his own case. *See* 28 U.S.C. § 1654 ("In all courts of the United States the parties may plead and conduct their own cases personally or by counsel…"). For these reasons, to the extent that plaintiff is attempting to bring claims on behalf of others, those claims must be dismissed.

Accordingly,

---

[1] Between October 10, 2020 and December 11, 2020, plaintiff has filed 42 cases in the United States District Court for the Eastern District of Missouri.

**IT IS HEREBY ORDERED** that plaintiff's motion for leave to proceed in forma pauperis (Docket No. 2) is **GRANTED**.

**IT IS FURTHER ORDERED** that plaintiff must pay an initial filing fee of $1.00 within twenty-one (21) days of the date of this order. Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) the statement that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that this action is **DISMISSED** without prejudice for failure to state a claim. *See* 28 U.S.C. § 1915(e)(2)(B). A separate order of dismissal will be entered herewith.

**IT IS FURTHER ORDERED** that an appeal from this dismissal would not be taken in good faith.

Dated this 22nd day of December, 2020.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE